UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDY E. CASTRO,<br><br>        Plaintiff,<br><br>    v.<br><br>CLOVIS UNIFIED SCHOOL DISTRICT, et al.,<br><br>        Defendants. | No. 1:19-cv-00821-DAD-SKO<br><br>AMENDED[1] ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. No. 45) |

This matter is before the court on the motion for summary judgment filed on behalf of defendants Clovis Unified School District, Stephanie Hanks, and Andrew Bolls. (Doc. No. 45.) Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, defendants' motion was taken under submission on the papers. (Doc. No. 46.) For the reasons explained below, the court will grant defendants' motion for summary judgment.

## BACKGROUND[2]

Plaintiff is a former Clovis High School student who graduated in 2019. (UF at ¶ 2.) Plaintiff was scheduled to attend his graduation ceremony on May 30, 2019. (*Id.* at ¶ 3.) On that

---

[1] *See* fn. 8, below.

[2] The relevant facts that follow are derived primarily from defendants' statement of undisputed facts (Doc. No. 45-2 ("UF")). In his opposition to the pending motion for summary judgment, plaintiff stated that the UF "contained no undisputed facts (and therefore no sperate response is offered)." (Doc. No. 56 at 1.)

1

1   same day, plaintiff posted to his personal Twitter page a picture of another classmate with the

2   caption "nigger." (*Id.*) Plaintiff posted the tweet while on the school's campus and during school

3   hours. (*Id.*) The classmate featured in the picture plaintiff posted is African American. (*Id.*)

4   Another student saw the tweet and contacted defendant Stephanie Hanks—the site principal of

5   Clovis High School—to inform her of the tweet and how it had upset the reporting student. (*Id.*

6   at ¶ 4.) Plaintiff and his parents were called into defendant Hanks' office, and plaintiff was

7   provided with his high school graduation diploma and informed that he would not be permitted to

8   walk at his graduation ceremony as a result of his May 30, 2019 online behavior. (*Id.* at ¶ 5.)

9         Plaintiff asserts four causes of action in his first amended complaint ("FAC"): (1)

10  violation of his First Amendment right to free speech; (2) violation of his Fourteenth Amendment

11  right to due process; (3) violation of his right to free speech under Article I, § 2 of the California

12  Constitution; and (4) violation of his right to free speech under California Education Code §

13  48950(a). (Doc. No. 27.)

14        On August 9, 2021, defendants filed the pending motion for summary judgment. (Doc.

15  No. 45.) Plaintiff did not initially file an opposition to that motion.[3] Nonetheless, defendants

16  filed a reply in support of their motion on September 13, 2021. (Doc. No. 49.) Subsequently, the

17  court ordered counsel for both parties to appear at a specially set hearing on April 19, 2022, in

18  order to address why plaintiff's counsel had not filed an opposition or statement of non-

19  opposition to defendants' pending motion for summary judgment as is required pursuant to Local

20  Rule 230(c). (Doc. No. 54.) Counsel for both parties appeared via video at the April 19, 2022

21  hearing. (Doc. No. 55.) At that hearing, plaintiff's counsel confirmed that plaintiff wished to

22  proceed with this action, and pursuant to the agreement of the parties, the court set a new briefing

---

[3] At the October 1, 2019, hearing on the motion to dismiss brought by the then named defendants, plaintiff appeared on his own behalf and the undersigned suggested to plaintiff that the legal issues raised by his complaint were serious and complex and that he would be well-served to attempt to secure counsel if he wished to pursue this action. On November 15, 2019, the undersigned issued an order granting the motion to dismiss this action brought by the City of Clovis in its entirety and granting the motion to dismiss brought on behalf of the Clovis Unified School District ("CUSD") defendants in part. (Doc. No. 25.) The court also granted plaintiff leave to file an amended complaint. (*Id.*) On December 15, 2019, attorney John William Hastrup appeared on behalf of plaintiff and filed plaintiff's first amended complaint. (Doc. Nos. 26, 27.)

2

schedule with respect to the pending motion for summary judgment. (*Id.*) Counsel on behalf of plaintiff finally filed his opposition to the pending motion on April 29, 2022. (Doc. No. 56.) Defendants filed a renewed reply thereto on May 12, 2022.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The opposing party also must demonstrate the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

# ANALYSIS

## A. Violation of Plaintiff's First Amendment Right to Free Speech

Plaintiff's first cause of action alleges that defendants' actions violated his right to free speech under the First Amendment of the United States Constitution. (FAC at 4.) In their motion for summary judgment, defendants argue that they were entitled to regulate plaintiff's speech because that speech took place on school grounds, had the potential to cause disruptions at school, and invaded the rights of other students. (Doc. No. 45-1 at 5.) Defendants contend that not only was plaintiff's speech hateful and adversely impacting other students, but defendant Hanks "had a reasonable expectation that Plaintiff's words would cause further disruption both before and during the graduation ceremony." (*Id.*)

Under the First Amendment, the government cannot prohibit or penalize the expression of an idea "simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). As another district court has observed under somewhat similar circumstances, "[t]he wrinkle here is that the speech . . . involved a public high school and its students." *Shen v. Albany Unified Sch. Dist.*, No. 3:17-cv-02478-JD, 2017 WL 5890089, at *4 (N.D. Cal. Nov. 29, 2017). The Supreme Court has made clear that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). Nevertheless, the "constitutional rights of students in public schools are not automatically coextensive with the rights of adults in other settings." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986). "Schools must achieve a balance between protecting the safety and well-being of their students and respecting those same students' constitutional rights." *C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1148 (9th Cir. 2016) (internal citation omitted).

Consequently, "school speech" is not analyzed under the traditional First Amendment framework. *Shen*, 2017 WL 5890089, at *4. Rather, as the Ninth Circuit has held, a school-specific framework applies: "vulgar, lewd, obscene, and plainly offensive speech" is governed by the decision in *Fraser*, 478 U.S. 675; "school-sponsored speech" is governed by the decision in *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988); "speech promoting illegal drug use" is

governed by the decision in *Morse v. Frederick*, 551 U.S. 393 (2007); and speech that falls into none of these categories is governed by the decision in *Tinker*, 393 U.S. 503. *See generally Wynar v. Douglas Cnty. Sch. Dist.*, 728 F.3d 1062, 1067 (9th Cir. 2013).[4] Based on the undisputed evidence on summary judgment in this case, the court concludes that plaintiff's speech falls into none of the listed school-specific categories and is thus governed by the Supreme Court's decision in *Tinker*.[5]

Under the holding in *Tinker* schools are permitted to restrict student speech in two broad sets of circumstances: if the speech "might reasonably lead school authorities to forecast substantial disruption of or material interference with school activities," or, alternatively, if the speech "collides 'with the rights of other students to be secure and to be let alone.'" *Wynar*, 728 F.3d at 1070 (quoting *Tinker*, 393 U.S. at 508, 514). "[C]onduct by [a] student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is . . . not immunized by the constitutional guarantee of freedom of speech." *Tinker*, 393 U.S. at 513.

1. Disruption

As noted, "[u]nder *Tinker*, schools may prohibit speech that 'might reasonably [lead] school authorities to forecast substantial disruption of or material interference with school activities[.]'" *Wynar*, 728 F.3d at 1067 (quoting *Tinker*, 393 U.S. at 508). "School officials do not have to wait for the disruption or invasion to take place; they may act prophylactically if it is

---

[4] Similarly, the Supreme Court has recently addressed the ability of schools to regulate "off-campus" speech when students post on the internet. *See, e.g.*, *Mahanoy Area Sch. Dist. v. B.L. by & through Levy*, __U.S.__, 141 S. Ct. 2038 (2021). Given that this case concerns internet postings that occurred on-campus and during school hours, the decision in *Mahanoy* does not meaningfully apply here, nor does it alter the court's application of the traditional *Tinker* framework governing when schools may regulate on-campus disruptive speech. *See Mahanoy*, 141 S. Ct. at 2049 ("In *Tinker* . . ., not only did the speech occur on school grounds during the regular school day, but our opinion was specifically directed at on-premises speech.").

[5] Plaintiff's speech at issue here could also likely be categorized as "vulgar" or "plainly offensive" under *Fraser*, but because the court may resolve plaintiff's free speech claim by applying the rationale of *Tinker*, it need not consider whether plaintiff's speech was also "plainly offensive" under *Fraser*. *See Harper v. Poway Unified Sch. Dist.*, 445 F.3d 1166, 1176 at n.14 (9th Cir. 2006), *vacated on other grounds as moot*, 549 U.S. 1262 (2007).

reasonable under the circumstances." *Shen*, 2017 WL 5890089, at *8 (citing *LaVine v. Blaine Sch. Dist.*, 257 F.3d 981, 989 (9th Cir. 2001)). Moreover, "[i]n the school context, . . . [t]he cases do not distinguish between 'substantial disruption' caused by the speaker and 'substantial disruption' caused by the reactions of onlookers or a combination of circumstances." *Dariano v. Morgan Hill Unified Sch. Dist.*, 767 F.3d 764, 778 (9th Cir. 2014) (as amended Sept. 17, 2014).

The evidence presented by defendants here in moving for summary judgment fails to establish that plaintiff's actions posed a substantial threat of causing a disruption at Clovis High School's graduation ceremony. The *only* evidence that defendants have come forward with in this regard is a declaration by defendant Hanks in which the principal states that "[b]ased upon [her] professional background and experience, [she] believed that Plaintiff's tweet would cause a disruption before and during the graduation by way of media coverage or a further invasion of rights into other African American students in the graduating class." (Doc. No. 45-5 at 2.) Although school officials may act prophylactically if it is reasonable under the circumstances, defendants have offered no evidence to support defendant Hanks' expressed concerns. Accordingly, the court cannot conclude on summary judgment that defendants were, as a matter of law, entitled to regulate plaintiff's speech due to the potential for disruption of an on campus graduation ceremony. *Cf. Shen*, 2017 WL 5890089, at *8 ("After the disclosure, the students who first gathered in the hallway were 'all too upset to go to class' and 'were crying hysterically and talking loudly about the posts.' [. . .] School officials called in mental health counselors to help calm down the students.").

Nevertheless, defendants also contend that plaintiff's posting clearly interfered with "the rights of other students to be secure and to be let alone." *Tinker*, 393 U.S. at 508. The court turns to address that argument below.

    2.    <u>Interference with the Rights of Others</u>

As the Ninth Circuit has observed, "[t]he precise scope of *Tinker*'s interference with the rights of others language is unclear." *Wynar*, 728 F.3d at 1072 (quoting *Saxe v. State Coll. Area. Sch. Dist.*, 240 F.3d 200, 217 (3rd Cir. 2001)). That circuit court has held, however, that speech that "is merely offensive to some listener" is not sufficient, and does not fall within *Tinker*'s

7

scope. *Id.* Although speech that is "merely offensive to others" does not fall within *Tinker*, it has been observed that "good guidelines exist for determining what constitutes impermissible interference with the rights of other students." *Shen*, 2017 WL 5890089, at *9. For example, the Ninth Circuit has concluded that sexually harassing conduct directed toward a student violates their right to be secure because it "threaten[s] the individual's sense of physical, as well as emotional and psychological, security." *C.R.*, 835 F.3d at 1152. Additionally, in *Shen*, the district court concluded that a school could punish students for liking and posting racist images and rhetoric online about other students and faculty. *Shen*, 2017 WL 5890089, at *2 ("The posts in large part targeted fellow AHS students and school personnel with racist and derogatory comments.").[6] In those cases, the speech "position[ed] the target as a[n] . . . object rather than a person[.]" *C.R.*, 835 F.3d at 1152. The Fourth Circuit's decision in *Kowalski v. Berkeley Cnty. Schs.*, 652 F.3d 565 (4th Cir. 2011) is similarly instructive in this regard. In that case, discipline imposed by the school on a student for online harassment and intimidation of a peer was allowed, with the Fourth Circuit holding that personally derogatory speech is "not the conduct and speech that our educational system is required to tolerate, as schools attempt to educate students about 'habits and manners of civility' or the 'fundamental values necessary to the maintenance of a democratic political system.'" *Id.* at 573 (quoting *Fraser*, 478 U.S. at 681). Similarly, as the district court in *Shen* observed:

> Whatever the outer boundary might be of *Tinker*'s interference inquiry, the[ ] cases establish that students have the right to be free of online posts that denigrate their race, ethnicity or physical appearance, or threaten violence. They have an equivalent right to enjoy an education in a civil, secure, and safe school environment.

*Shen*, 2017 WL 5890089, at *10.

Based on the evidence defendants have presented on summary judgment in this case, the court is compelled to conclude that defendants did not violate plaintiff's constitutional rights by disciplining him for his online post. While on school grounds and during school hours, plaintiff

---

[6] Notably, the punished conduct in *Shen* occurred off-campus. Here, plaintiff's speech falls even more clearly within the reach of school regulation considering that the conduct took place on-campus. *Shen*, 2017 WL 5890089, at *6.

posted a picture of an African American student under the caption "nigger." (Doc. No. 45-4 at 21.) Not only does such a post denigrate the portrayed student's "race, ethnicity, or physical appearance" due to the nature of that racial slur, but this speech likewise affected and invaded the rights of other students on that campus, who complained directly to defendant Hanks regarding the impact upon them of plaintiff's conduct. (*See* Doc. No. 45-5 at 23.) Specifically, the evidence before the court on summary judgment establishes that another African American student texted Principal Hanks and explained how the offensive tweets had directly impacted her. (*See id.*) Additionally, that same student posted multiple times on Twitter on May 30, 2019, complaining about plaintiff's tweet and stating that she "[had] a problem with it; a huge one in fact." (Doc. No. 45-4 at 28.) The evidence also shows that plaintiff retweeted the complaining student's tweets multiple times in an apparent effort to ridicule or shame her. (*See id.*) This evidence supports defendants' contention that they were permitted to punish plaintiff due to his interference with the rights and emotional security of both the student depicted in the original tweet as well as the student who saw the tweet and complained about it.[7] In his opposition to the pending motion, plaintiff argues that only a single student was offended by his tweet and that "student did not indicate that other students were offended." (Doc. No. 56 at 3.) This argument is not persuasive. Nothing in the Supreme Court's decision in *Tinker* suggests that more than one student's right to be secure and to be let alone need be materially invaded before school officials may take regulatory action. Accordingly, the court concludes that defendants are entitled to summary judgment in their favor as to plaintiff's cause of action asserting a violation of his First Amendment rights.

/////

---

[7] In his FAC, plaintiff alleges that defendants "censored and punished him for exercising his First Amendment right" to communicate with his "personal Nigerian-American friend who consented to Plaintiff's intercultural communication." (FAC at 4.) Plaintiff appears to have alleged in his complaint that the student depicted in his tweet was a friend of his and that his comments should therefore not have been construed as inappropriate. However, plaintiff has presented no evidence on summary judgement supporting this assertion. Moreover, plaintiff's subjective state of mind is irrelevant. Under the framework set out by the Supreme Court in *Tinker*, the inquiry is simply whether the speech at issue interfered with the rights of other students to be secure and left alone. *Shen*, 2017 WL 5890089, at *10.

Nonetheless, the undersigned finds this case to be a close one. If no students' rights had been interfered with under the evidence or if plaintiff's speech had occurred off-campus, defendants may well not be entitled to prevail on the pending motion. *See Mahanoy Area Sch. Dist.*, 141 S. Ct. at 2046 (finding that "the leeway the First Amendment grants to schools in light of their special characteristics is diminished" in the context of off-campus speech); *Tinker*, 393 U.S. at 509 (finding that school officials must "be able to show that [their] action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint"); *Cohen v. California*, 403 U.S. 15, 25 (1971) ("We cannot lose sight of the fact that, in what otherwise might seem a trifling and annoying instance of individual distasteful abuse of privilege, these fundamental societal values are truly implicated."). Nevertheless, the undisputed evidence presented on summary judgment in this case establishes that plaintiff's speech occurred on campus and at least the right of one individual student to be secure and to be let alone was interfered with by plaintiff. *See Harper*, 445 F.3d at 1178 ("Speech that attacks high school students who are members of minority groups that have historically been oppressed, subjected to verbal and physical abuse, and made to feel inferior, serves to injure and intimidate[8] them, as well as to damage their sense of security and interfere with their opportunity to learn.")

**B.     Violation of Plaintiff's Right to Free Speech Under the California Constitution**

Plaintiff's third cause of action is for the alleged violation of his free speech rights guaranteed by the California Constitution. (FAC at 5.) The California Supreme Court has reiterated that the same standards applied by the United States Supreme Court in *Tinker* with respect to free speech rights in schools also apply under the California Constitution. *See, e.g.*, *Bright v. Los Angeles Unified Sch. Dist.*, 18 Cal. 3d 450, 455 (1976) ("[T]hese rights of students must be balanced against the rights—indeed the obligations—of school authorities to administer the school and discipline students.") (citing *Tinker*, 393 U.S. 503). In his opposition to the pending motion, plaintiff concedes that the decision in *Tinker* articulates the standards applicable

---

[8] The original version of this order included a typographical error ("intimate" rather than "intimidate"). (*See* Doc. No. 58 at 10.) The court issued this amended order to correct that error.

to his free speech claims brought under the California Constitution.  (*See* Doc. No. 56 at 5.) Accordingly, for the same reasons explained above in addressing plaintiff's First Amendment based cause of action, so too will the court grant summary judgment in favor of defendants with respect to plaintiff's claim that defendants violated his right to free speech under the California Constitution.

**C.      Violation of Plaintiff's Due Process Rights Under the Fourteenth Amendment**

In his second cause of action, plaintiff asserts that defendants' actions violated his right to due process under the Fourteenth Amendment.  (FAC at 4.)  Specifically, plaintiff alleges that defendants "deprived him of his earned and thus vested right to participate in his graduation ceremony, and effectively expelled him therewith without any right to be heard administratively or judicially nor to appeal in any forum."  (*Id.* at 4–5.)  According to plaintiff, that conduct by defendants "violated [his] right to due process guaranteed by the Fourteenth Amendment to the United States Constitution to notice and opportunity to be heard before his rights and privileges" were "taken from him by Defendants under color of law."  (*Id.* at 5.)

Although the punishment imposed upon plaintiff in this case by school officials was prohibiting him from participating in his graduation ceremony, other cases dealing with the actual suspension of students are the most analogous and instructive here.  In the context of such punishment, "[t]he Constitution requires only informal procedures when schools suspend students for ten days or fewer." *C.R.*, 835 F.3d at 1153.  "[T]he student [must] be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975).  "The school need not outline specific charges and their potential consequences nor notify parents of the charges prior to the student's suspension." *C.R.*, 835 at 1153 (citing *Wynar*, 728 F.3d at 1072–73).  "In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred." *Goss*, 419 U.S. at 582. Courts require "only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is." *Id.*  The school need not inform a student of the specific rules or policies he

allegedly violated; need not inform the student exactly how his conduct violates the specific rules at issue; and need not provide the student with an adequate opportunity to gather relevant evidence to rebut the school's charges. *Id.* at 1154.  Furthermore, the Supreme Court has recognized that "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship." *Fraser*, 478 U.S. at 686 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985)).  With respect to due process in this area, the Supreme Court has observed that, "[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." *Id.*

       Here, Clovis High School's decision to revoke plaintiff's privilege to walk at his graduation ceremony "does not rise to the level of a penal sanction calling for the full panoply of procedural due process protections applicable to a criminal prosecution." *Id.*  In any event, the evidence on summary judgment establishes that plaintiff was provided with significant notice that his actions were punishable, and he was provided with an opportunity to be heard.

       First, the high school's "Senior Handbook" and "Parent-Student Handbook," both of which were issued to plaintiff, provided him with adequate warnings that his behavior could subject him to discipline up to and including not being permitted to walk at graduation.  For example, the Parent-Student Handbook specifically stated that "this school will not tolerate behavior by anyone that insults, degrades, or stereotypes any race, gender, handicap, physical condition, ethnic group, religion, or sexual orientation." (Doc. No. 45-5 at 6.)  The Parent-Student Handbook further stated that "[i]nappropriate messages on social media sites or via text may be considered cyber bullying and disrespectful conduct." (*Id.* at 8.)  This stated school policy is supported by Clovis Unified School District's Administrative Regulation No. 2116, which provides that students are forbidden from bullying their peers by way of the internet or via social media in a manner that would cause "a reasonable pupil to experience substantial interference with his or her ability to participate in or benefit from the services, activities, or privileges provided by a school." (Doc. No. 45-4 at 35.)  Furthermore, the Senior Handbook

1  explicitly admonished that "it is a privilege, not a right to participate in the Graduation ceremony"
2  and "Clovis High School is under no obligation to allow anyone who violates the rules and
3  procedures in the handbook or any other school district policy to participate in the Graduation
4  ceremony." (*Id.* at 10.) Thus, the evidence on summary judgment clearly establishes that
5  plaintiff was on notice both that his actions violated school policy and could result in him losing
6  the privilege to walk at graduation.

7  Second, plaintiff was provided notice of the allegations against him, and he was offered an
8  opportunity to explain his side of the story with respect to his conduct. On summary judgment, it
9  has been established that on May 30, 2019, plaintiff and his parents met with defendant Hanks in
10 her office, where plaintiff was informed that he would not be permitted to walk at graduation due
11 to his online behavior earlier that day. (UF at 3.) According to the evidence before the court,
12 during that meeting, plaintiff and defendant Hanks were "basically arguing" and in response to a
13 demand that he delete the tweet, plaintiff asserted "you can't make me delete it. It's my right."
14 (Doc. No. 45-4 at 19.) The evidence also establishes that defendants explained to plaintiff why he
15 was being disciplined, and plaintiff defended himself by arguing that he had the right to post what
16 he had posted on social media. There is simply no evidence suggesting that plaintiff was denied
17 due process.

18 Based upon the undisputed evidence before the court on summary judgment, the court
19 concludes that plaintiff was not deprived of his due process rights under the Fourteenth
20 Amendment. Therefore, the court will also grant defendants' motion for summary judgment as to
21 plaintiff's second cause of action in which he asserts a due process violation.

22 **D.  Violation of California Education Code § 48950(a)**

23 Plaintiff's fourth cause of action is for the alleged violation of his right to be free from
24 disciplinary sanctions under California Education Code § 48950(a). (*Id.* at 6.) Section 48950(a)
25 provides that schools may not discipline pupils "solely on the basis of conduct that is speech or
26 other communication that, when engaged in outside of the campus, is protected from
27 governmental restriction by the First Amendment of the United States Constitution or Section 2
28 of Article I of the California Constitution." Cal. Educ. Code § 48950(a). In his opposition,

plaintiff concedes that if the court grants defendants' motion as to his other free speech claims, the court should also dismiss his claim brought pursuant to § 48950(a). (Doc. No. 56 at 5) ("Plaintiff concedes that if he had no free speech right in his tweets that [§ 48950(a)] would not have been violated.") At least one other district court appears to have held the same. *See Shen*, 2017 WL 5890089, at *12 (concluding that § 48950(a) did not apply to impermissible online speech that was closely tied to the school and its students). Therefore, the court will also grant summary judgment in defendants' favor with respect to plaintiff's fourth cause of action alleging a violation of § 48950(a).[9]

## CONCLUSION

Accordingly,

1. Defendants' motion for summary judgment (Doc. No. 45) is granted; and
2. The Clerk of the Court is directed to enter judgment in favor of defendants and to close this case.

IT IS SO ORDERED.

Dated: **May 24, 2022**

UNITED STATES DISTRICT JUDGE

---

[9] In one case the California Court of Appeal has referenced in passing that § 48950 "provides further protections for student free speech rights" beyond those present in the First Amendment or the California Constitution. *Smith v. Novato Unified Sch. Dist.*, 150 Cal. App. 4th 1439, 1453 (2007). However, case law on the scope of those additional protections has been appropriately described as "quite sparse." *Shen*, 2017 WL 5890089, at * 12. Indeed, the parties submit no authority—nor is the court aware of any—that clarifies in what way § 48950 does or could afford greater First Amendment protections than those recognized by the Supreme Court in *Tinker*.